UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-4282(DSD/SRN)

Northstar Industries, Inc.,
a Minnesota corporation,

                Plaintiff,

v.                                                    **ORDER**

Merrill Lynch & Co., Inc. and
Merrill Lynch Global Private
Equity, Inc., f/k/a Merrill
Lynch Global Partners, Inc.,
foreign corporations, and
Robert F. End, individual,

                Defendants.


        Paul Egtvedt, Esq. and Egtvedt Law Firm, 2915 Wayzata
        Boulevard, Minneapolis, MN 55405, counsel for plaintiff.

        Robert L. Schnell, Esq., Jana M. Viramontes, Esq. and
        Faegre & Benson, 2200 Wills Fargo Center, 90 South
        Seventh Street, Minneapolis, MN 55402, counsel for
        defendants.


        This matter is before the court upon defendants' motion to

dismiss.  Based upon a review of the file, record and proceedings

herein, and for the following reasons, the court grants defendants'

motion.


                            **BACKGROUND**

        This business dispute arises from an agreement between

plaintiff Northstar Industries, Inc. ("Northstar") and defendant

Merrill Lynch Global Private Equity, Inc. ("MLGPE").  Northstar is

a Minnesota corporation that provides services related to mergers and acquisitions.  MLGPE is an investment firm incorporated in Delaware with its principal place of business in New York.  It is a subsidiary of defendant Merrill Lynch & Co., Inc. ("Merrill Lynch").

In January 2004, Northstar entered into a fee agreement (the "Stonington agreement") with Stonington Partners, Inc. ("Stonington"), a private equity firm.  Under that agreement, Stonington agreed to pay Northstar a fee in the event that Northstar provided the name of a business that led to an acquisition or investment by Stonington.  Specifically, Stonington would pay Northstar two percent of the first $100 million in transaction value and one percent of the value thereafter.

In late 2004 or early 2005, Northstar learned that Gene Bicknell ("Bicknell"), chairman of NPC International, Inc. ("NPC"), was interested in selling one of his companies.  Northstar brought the information to Stonington, which referred Northstar to MLGPE as a potential NPC purchaser.  As a result, on March 4, 2005, Northstar and MLGPE entered into a fee agreement of their own that adopted the terms of the Stonington agreement and provided that if MLGPE purchased NPC, MLGPE would pay Northstar any fees due under the Stonington agreement.  Northstar participated in an introductory meeting between Bicknell and MLGPE managing director Robert End ("End") in March 2005 but then, upon instruction from

MLGPE, played no role in the lengthy negotiations between NPC and MLGPE.

By October 2006, negotiations had stagnated after NPC requested a higher purchase price than MLGPE was willing to pay. In an attempt to end the stalemate, MLGPE looked to cut costs associated with the purchase.  To that end, MLGPE contacted Northstar and requested that it reduce its finder's fee from the anticipated $7.1 million to $1.5 million to enable MLGPE to complete the deal.  Northstar alleges that during conversations about reducing Northstar's fee, End asserted that the fees of other companies involved in the deal would be reduced pro rata. Northstar initially refused the reduction, counter-offering with a request for $3.6 million in fees and other consideration.  End responded to Northstar by email that his request was a nonnegotiable "last stab at the deal" and that based on Northstar's refusal to reduce its fee the "deal [was] dead."  (Def. App. at 7-8.)

End's email ultimately prompted Northstar to agree to the $1.5 million finder's fee, and on November 1, 2005, Northstar and MLGPE entered into a revised fee agreement (the "November agreement") reflecting that amount.  The November agreement provided that "in no case shall [MLGPE] be obligated to pay any Fee in excess of [$1.5 million]" and noted that it was the "sole and entire agreement between the parties [with] no modification ... binding

unless attached ... and signed by each party to the agreement." (<u>Id.</u> at 1, 10.)  MLGPE and NPC completed a stock-purchase deal in March 2006.

In March 2007, Northstar reviewed NPC's press release and its Securities and Exchange Commission filings and concluded that the other companies involved in the NPC acquisition had not reduced their fees pro rata.  Accordingly, on October 17, 2007, it filed this action alleging that Merrill Lynch, MLGPE and End breached certain fiduciary duties, breached their duty of good faith and fair dealing and engaged in fraud and misrepresentation.  On December 20, 2007, defendants moved to dismiss all claims.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  This statement does not require detailed factual allegations so long as it "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  However, a court will dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted if, after taking all facts

alleged in the complaint as true, those facts fail "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

## I.   Defendants' Fiduciary Duty to Northstar

Northstar argues that defendants breached the fiduciary relationship that existed between the parties. Specifically, Northstar alleges that End's instruction to cease talking to NPC gave defendants greater access to the facts surrounding the transaction and produced a fiduciary relationship. Defendants maintain that the arm's length negotiations engaged in with Northstar - a sophisticated businesses - created no fiduciary relationship between the parties.

In Minnesota, the existence of a fiduciary duty is a question of fact. See Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985); Burgmeier v. Farm Credit Bank of St. Paul, 499 N.W.2d 43, 51 (Minn. Ct. App. 1993). A fiduciary relationship exists when

> confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal .... Disparity of business experience and invited confidence could be a legally sufficient basis for finding a fiduciary relationship.

Toombs, 361 N.W.2d at 809 (internal citations and quotations omitted). However, "special circumstances" must be present in a relationship between parties in order to establish a fiduciary relationship. St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc., 738

N.W.2d 401, 406 (Minn. Ct. App. 2007).  Thus, "ordinary business relationships may involve reliance on a professional, a degree of trust, and a duty of good faith, and yet not fall within the class of fiduciary relationships."  Id.  Relationships that involve competing interests and "often generate litigation" are "not compatible with the concept of a fiduciary."  Cherne Contracting Corp. v. Wausau Ins. Cos., 572 N.W.2d 339, 343 (Minn. Ct. App. 1997).  Accordingly, the arm's-length negotiation of a contract does not give rise to a fiduciary relationship.  See Shema v. Thorpe Bros., 67 N.W.2d 86, 91 (Minn. 1953).

In this case, both MLGPE and Northstar are sophisticated business entities who were adequately prepared to negotiate the November fee agreement at arm's length.  Northstar chose to rely on and trust End, but that decision alone did not create a fiduciary duty.  See A.P.I., 738 N.W.2d at 406.  Nor did defendants' request that Northstar cease communication with NPC increase defendants' relative superiority or influence so as to create a fiduciary relationship.  That request coupled with End's insistence on Northstar's fee reduction illustrated the competing interests at play in the transaction despite the parties' mutual desire to complete the NPC deal.  For these reasons, Northstar's allegations are legally insufficient to establish a fiduciary relationship between the parties, and the court dismisses Northstar's breach of fiduciary duty claim.

6

## II.  Defendants' Duty of Good Faith and Fair Dealing

Northstar contends that defendants breached the implied duty of good faith and fair dealing when negotiating the November agreement.  Under Minnesota law, "every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract."  <u>In re Hennepin County 1986 Recycling Bond Litig.</u>, 540 N.W.2d 494, 502 (Minn. 1995) (quoting <u>Sobel & Dahl Constr. v. Crotty</u>, 356 N.W.2d 42, 45 (Minn. 1984)).  The implied covenant "does not extend to actions beyond the scope of the underlying contract."  <u>Id.</u>  Indeed, Minnesota does not recognize a claim for breach of the implied covenant of good faith and fair dealing separate from an underlying breach of contract claim.  <u>See Medtronic, Inc. v. Convacare, Inc.</u>, 17 F.3d 252, 256 (8th Cir. 1994).

Here, Northstar does not argue that defendants interfered with performance of any contract provisions.  More important, Northstar does not allege that defendants breached the November agreement.  By definition, therefore, defendants did not breach the implied duty of good faith and fair dealing.  Accordingly, the court dismisses that claim against defendants.

## III.  Fraud and Misrepresentation

Northstar alleges that defendants engaged in fraud when End purportedly told Northstar that all parties were taking pro rata

cuts in order to reach a deal with NPC and that the deal would be dead without the reduction. To establish fraudulent misrepresentation in Minnesota, a plaintiff must demonstrate that:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

Hoyt Props., Inc. v. Prod. Res. Group, L.L.C., 736 N.W.2d 313, 318 (Minn. 2007) (citing Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986)).

## A.    Reliance

Defendants challenge Northstar's reliance on End's alleged promise, arguing that Northstar cannot claim fraudulent inducement by promises that are directly contradicted by the November agreement. See Prod. Credit Ass'n of E. Cent. Wis. v. Farm Credit Bank of St. Paul, 781 F. Supp. 595, 605-06 (D. Minn. 1991) ("[A] party may not claim fraudulent inducement by promises that are directly contradicted by a subsequently executed agreement, absent some factor justifying the party's reliance."). Whether a party's reliance is reasonable is "ordinarily a fact question for the jury unless the record reflects a complete failure of proof." Hoyt, 736 N.W.2d at 321. A party may rely on a representation unless the

falsity of the representation is known or obvious to the listener. See Speiss v. Brandt, 41 N.W.2d 561, 566 (Minn. 1950). Further, the listener is under no obligation to conduct an investigation so long as it is not known by the listener that a representation is false and it is not obviously false. Id. However, where "an oral representation completely contradicts a written contract provision, reliance on the oral representation is unjustifiable as a matter of law." Boyd v. DeGardner Realty & Constr., 390 N.W.2d 902, 904 (Minn. Ct. App. 1986) (citing Johnson Bldg. Co. v. River Bluff Dev. Co., 374 N.W.2d 187, 194 (Minn. Ct. App. 1985)).

Here, the November agreement states that MLGPE will "in no case" pay Northstar more than $1.5 million. (Def. App. at 10.) While it would preclude reliance on a statement promising further compensation after the deal, such contract language does not contradict End's alleged promises about pro rata reductions and the potential death of the deal. Indeed, the November agreement contains no reference to pro rata reductions or deal saving actions, and without explicit mention of these matters, there can be no complete contradiction. Moreover, although the integration clause prevented the alleged pro rata promise from becoming part of the agreement, it does not foreclose the possibility that the promise induced Northstar to enter into the deal. For these reasons, defendants have not demonstrated that as a matter of law Northstar could not rely on End's purported statements.

**B.    Damages**

Defendants argue that the court should dismiss Northstar's fraud claim because Northstar cannot establish properly recoverable damages.  The general measure of damages for fraud is out-of-pocket losses.  See Noske v. Friedberg, 713 N.W.2d 866, 876 (Minn. Ct. App. 2006) (citing B.F. Goodrich Co. v. Mesabi Tire Co., 430 N.W.2d 180, 182 (Minn. 1988)).   That is, where fraud induces a transaction, the measure of damages is "the difference between what is given and what is received."  See Jensen v. Peterson, 264 N.W.2d 139, 142 (Minn. 1978).

A limited exception may apply, however, allowing a plaintiff to recover the difference between the value of the property received and the value it would have had if the representation had been true, if out-of-pocket damages would not make the party whole. B.F. Goodrich, 430 N.W.2d at 182-83.  Courts have recognized this exception sparingly - primarily in situations where the primary damages are "sweeping and general, such that out-of-pocket damages would have failed entirely to compensate the plaintiffs," Vesta State Bank v. Independent State Bank of Minnesota, No. 96-1115, 1996 WL 653967, at *6 (Minn. Ct. App. Nov. 12, 1996), or where "the strict application of an out of pocket damage rule would fail to do substantial justice," Jensen, 264 N.W.2d at 143.  See, e.g., B.F. Goodrich, 430 N.W. 2d at 182-83 (where plaintiff's entire business lost because of misrepresentations, benefit-of-bargain damages

proper); <u>Lewis v. Citizens Agency of Madelia, Inc.</u>, 235 N.W.2d 831, 835-36 (Minn. 1975) (where insurance agent misrepresented that plaintiff had life insurance policy rather than annuity, plaintiff recovered value of proceeds rather than merely premiums); <u>Hanks v. Hubbard Broad., Inc.</u>, 493 N.W.2d 302, 310-11 (Minn. Ct. App. 1992) (where misrepresentations severely damaged anchor's career, benefit-of-bargain damages proper); <u>Brooks v. Doherty, Rumble & Butler</u>, 481 N.W.2d 120, 128-29 (Minn. Ct. App. 1992) (where misrepresentations damaged attorney's career, benefit-of-bargain damages appropriate). The rule "crafted by the Minnesota courts thus lies somewhere between a strict application of the out-of-pocket rule and the more liberal benefit-of-the-bargain rule. At the same time, Minnesota courts have consistently emphasized that the point is to compensate actual losses, not prospective gains." <u>Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.</u>, 61 F.3d 639, 648 (8th Cir. 1995).

Northstar maintains that it suffered a loss of approximately $5.6 million due to defendants' misrepresentations, arriving at that number by subtracting the $1.5 million it received from the $7.1 million originally agreed upon. Northstar's calculations, however, fail to account for the contingent nature of each fee agreement. Northstar could receive no finder's fee if MLGPE and NPC did not complete a deal, a reality Northstar accepted by agreeing to reduce its fee in order to facilitate the ultimate

sale.    In  this  context,  Northstar's  alleged  damages  cannot  be
actual  losses.    Rather,  Northstar  seeks  hypothetical  prospective
gains  that  are  not  cognizable  damages  in  this  case.    Accordingly,
Northstar's  fraud  claim  fails  as  a  matter  of  law.


### CONCLUSION

Therefore,  **IT  IS  HEREBY  ORDERED**  that  defendants'  motion  to
dismiss  [Doc.  No.  19]  is  granted.


**LET  JUDGMENT  BE  ENTERED  ACCORDINGLY.**


Dated:   June  5,  2008


                                        s/David S. Doty_____
                                        David S. Doty, Judge
                                        United States District Court